Roger GONZALEZ, Plaintiff,

v.

SCHMERLER FORD, Defendant.

No. 73 C 3163.

United States District Court,
N. D. Illinois, E. D.

April 24, 1975.

**324**

Ronald Goldberg, DePaul Law Clinic, Chicago, Ill., for plaintiff.

Jay L. Schultz, Chicago, Ill., for defendant.

## MEMORANDUM DECISION

MAROVITZ, District Judge.

Plaintiff Roger Gonzalez brings suit against Schmerler Ford, an automobile dealership engaged in selling new and used automobiles at retail to consumers, and charges defendant with violation of the Truth in Lending Act, 15 U.S.C.A. § 1601 *et seq.*, and Federal Reserve Regulation Z, 12 C.F.R. 226, by failing timely to disclose credit information in the sale of a used 1972 Pinto.

The Truth in Lending Act provides that "in connection with each consumer credit sale . . . , the creditor shall disclose . . . " divers items enumerated within the Act relating to the true cost of money or credit so that a consumer may compare rates between lenders or sellers. 15 U.S.C.A. § 1638(a). *Bissette v. Colonial Mortgage Corp. of D.C.*, 340 F.Supp. 1191 (D.D.C.1972), *rev'd. on other grounds*, 155 U.S.App. D.C. 360, 477 F.2d 1245 (1973). Subsection (b) of 15 U.S.C.A. § 1638 provides that, ". . . the diclosures required . . . shall be made before the credit is extended, and may be made by disclosing the information in the contract or other evidence of indebtedness to be signed by the purchaser." Regulation Z elaborates upon this requirement, stating that "such disclosures shall be made before the transaction is consummated," 12 C.F.R. 226.8(a), and further, that "a transaction shall be considered consummated at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party." 12 C.F.R. 226.2(cc).

The auto purchase at suit herein involves primarily two documents, one executed October 1, 1973, and one executed October 3, 1973. The October 1 document indicates that the Pinto was to be purchased for the sum of $2255.00, ten dollars of which was to be paid on October 1, and the remaining $2245.00 of which was to be paid on October 3. The October 3 document reflects an installment sales contract detailing a cash down payment, a trade-in on plaintiff's old car, and full disclosure of the credit information required by law. Plaintiff contends that the October 3 document is based upon an oral agreement of October 1 wherein plaintiff agreed to buy the used 1972 Pinto upon the expectation that Schmerler could arrange financing.

The central problem of the suit hinges on the dispute as to whether the document executed by the parties on October 1, 1973, accurately reflects the intention of plaintiff to purchase his car in one cash payment due on October 3, 1973, or

whether that document only reflects plaintiff's commitment to buy the car subject to being able to arrange financing, with both parties knowing that a credit sale is contemplated from the outset of the transaction; the former situation would not require credit disclosures on October 1 since the Act has excluded from its coverage transactions in which finance charges are payable in four or fewer installments, 12 C.F.R. 226.2(k), whereas the latter situation arguably would necessitate an October 1 disclosure on the theory that a credit sale was consummated on that date, even though the written installment contract was not executed until October 3.

On February 6, 1974, defendant moved to dismiss the original complaint, which motion was granted pursuant to a Memorandum Opinion filed by this court on March 29. On April 8, 1974, plaintiff filed a motion to vacate our order of March 29, 1974, and for leave to amend his complaint instanter. On May 31, 1974, we filed a second Memorandum Opinion granting plaintiff's motion.

On December 19, 1974, a Final Pretrial Order was entered providing that no witnesses were to be heard and that the case was to be decided by this court, without a jury, on the basis of the written documents filed herein. We proceed to a disposition of the case on the merits.

Initially, two threshold questions must be confronted: (1) is any evidence other than the two documents described above, dated October 1 and October 3, 1973, admissible, and (2) is Schmerler Ford an "arranger of credit" as defined by Regulation Z, 12 C.F.R. 226.2(f).

The defendant objects, based upon the substantive rule concerning parol evidence, to the introduction into evidence of any depositions, affidavits, or documents other than those incorporated into the amended complaint. The parol evidence rule states that when two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing. 3 Corbin on Contracts, § 573. The issues here, however, do not deal with varying the terms of a contract, but rather relate to whether the parties assented to a particular writing as the complete and accurate "integration" of that contract, whether there existed any contract or contracts—oral, written, or both—and when any given contractual relationship was formed. In determining these issues, or any one of them, there is no parol evidence rule to be applied; on these issues, no relevant evidence is excluded. No written document is sufficient, standing alone, to resolve these issues; no one of these issues can be determined by a mere inspection of the written document. 3 Corbin on Contracts, § 573. This case presents the typical hornbook situation for circumstances compelling the examination of parol evidence.

Defendant further argues that he is not an "arranger of credit" and so not covered by the Act. Regulation Z, 12 C.F.R. 226.2(f), provides:

(f) "Arrange for the extension of credit" means to provide or offer to provide consumer credit which is or will be extended by another person under a business or other relationship pursuant to which the person arranging such credit receives or will receive a fee, compensation, or other consideration for such service or has knowledge of the credit terms and participates in the preparation of the contract documents required in connection with the extension of credit. It does not include honoring a credit card or similar device where no finance charge is imposed at the time of that transaction.

The stipulated facts provide that while defendant does not extend credit to customers itself, it does, upon request, regularly assist potential customers in obtaining external credit from

third parties to assist the potential customer in the purchase of an automobile. Schmerler generally contacts Ford Motor Credit Corporation, Citizens Bank & Trust Co., or various other financial institutions. Interrogatory No. 5. Defendant may submit as many as ten to fifteen requests for credit per day, according to defendant's finance manager. Duski deposition, p. 13.

It is further stipulated that on October 1, 1973, defendant and the plaintiff prepared a document which was transmitted to Ford Motor Credit Corporation, a potential third party creditor, on October 2, 1973. The document sets forth plaintiff's credit references and certain terms requested by plaintiff. Defendant did not know for certain, however, whether any third parties would be willing to extend credit to plaintiff. Stipulated Fact No. 11.

On October 3, 1973, Ford Motor Credit Corporation telephoned defendant and indicated that it would extend credit to plaintiff. In approving the credit application Ford Motor Credit Corporation did not set the interest rate or amount of monthly interest payments, but rather granted the defendant authority to negotiate an interest rate with plaintiff, which interest rate would be between the maximum allowable interest rate under State law and a minimum interest rate set by Ford Motor Credit Corporation.

Clearly Schmerler Ford has more than just a casual nexus with Ford Motor Credit Corporation. Defendant has stipulated that it prepared the customer statement to be forwarded to the potential creditor, and inasmuch as defendant seems to deal with Ford Motor Credit Corporation on a frequent basis, it contravenes common sense to conclude that it lacks knowledge of Ford's credit terms. We find that through this general knowledge of the credit terms of Ford Motor Credit Corporation and through its participation in the preparation of contract documents, and finally, through its active role in negotiating the interest rate, Schmerler Ford has brought itself within the definition of an arranger of credit.

With regard to the documents themselves, defendant asks us to believe that Gonzalez intended on October 1 to pay for his 1972 Pinto in one $2245.00 cash payment on October 3. We find this conclusion untenable.

First, the parties have stipulated that on October 1, 1973, prior to the execution of any document, the plaintiff stated to an employee of defendant that he desired that the sale be made with the lowest monthly payments possible. Defendant argues that plaintiff's "desire" in this respect is not tantamount to plaintiff's conditioning his purchase on receiving those credit terms. Nonetheless, after negotiating a price on the 1972 Pinto with James Saxon, the salesman in this case, Roger Gonzalez was escorted into the office of the finance manager, Mr. Victor Duski. Duski proceeded to prepare a worksheet which was sent by teletype to Ford Motor Credit Corporation wherein was noted, *inter alia*, the price of the vehicle, the net trade-in, the cash down payment, and the desired time for extension of credit. Defendant claims that a credit check is run on all purchasers, including those paying on a cash basis, and explains the $300.00 downpayment as indicating not that plaintiff was to return with that sum, but merely that that figure is the sum which plaintiff offered to pay *if* his credit was approved. Duski does state, though, in the course of his deposition:

Q. But your understanding on October 1st was that Mr. Gonzalez would bring in an additional $300.00 for cash payment?

A. It must have been, yes. (Duski deposition, p. 36).

We believe both parties knew that Gonzalez was not entering into a cash transaction on October 1, and that that document was not intended to reflect the agreement of the parties as to how plaintiff would pay for the car.

Having so concluded, we find the most difficult issue still before us, to wit: was the credit sale consummated on October 1, or on October 3 when the written installment contract was executed?

Plaintiff contends that disclosures may be necessary at the time of sale even though there is no written installment contract in force at the time of sale. He relies for this proposition on the following excerpt from a Federal Reserve Board letter discussing a situation much like the one herein:

. . . [Y]ou indicate that when a sale is made, the dealer and buyer enter into a buyer's agreement whereby the buyer agrees to buy for the cash price set forth therein and the seller agrees to sell at that price. If the buyer wishes for the dealer to arrange financing, then the dealer attempts to do so, and if able to do so, the dealer and buyer enter into a retail instalment contract wherein the required disclosures are set forth. If the dealer is unable to arrange financing or the financing arranged is unacceptable to the buyer, then there is no sale. You question whether this procedure complies with the requirements regarding the timing of disclosures under Regulation Z.

Regulation Z specifies that disclosures must be made prior to consummation of the credit transaction (see § 226.-2(cc)[¶ 3511]). Exactly when consummation occurs is determined by when a contractual relationship as to the financing arises between the parties under State law.

In the case you describe, there may thus be two "consummations", one of the sale and one of the financing, which occur at different times. On the other hand, in some cases the sale and financing may be so interrelated that they occur simultaneously. In those circumstances the disclosure would need to be made prior to the execution of the sale documents. Staff believes that where the sale is conditioned on the seller arranging specific financing whose terms are known to the seller, so that the financing is an integral part of the sale to the extent that a contractual relationship has been created between the creditor and a customer with regard to that financing, "consummation" of the credit transaction may have occurred at the time of execution of the sale documents and disclosures should be made at that point.

Griffith Garwood, Chief, Truth in Lending Section, FRB Letter, August 9, 1972, No. 623, CCH Consumer Credit Reporter ¶ 30,872.

Professor Johnson, a consultant on the Truth in Lending Regulations for the Federal Reserve Board, in commenting on a similar fact situation, stated that the expectation of the parties would force one to conclude that there are not "actually two separate transactions in this case, one for a sale of goods and one for credit. The purpose of the purchase order procedure is only to allow a salesman to get a floor commitment from the buyer that can be used to counteract the buyer's remorse while he awaits clearance in the credit office. Since most of the seller's sales are on credit, the salesman knows when he gets the buyer's signature on the purchase order that the likelihood of a credit transaction is great. Disclosure is of little help to a buyer who is told in the credit office that he has a choice either of signing the creditor's conditional sales contract form or of having collection procedures instituted against him because he is unable to come up with the cash." Johnson, Jordan, and Warren, Attorney's Guide to Truth in Lending, p. 111 (California Continuing Education of the Bar, 1969).

In the case at bar buyer has not only signed the "one-note" of October 1, but has also signed a Used Car Buyers Order, and taken his Pinto home. Hence, while we have concluded that the "one-note" of October 1 is not a binding and valid contract, in reality the only way a consumer remains free to negotiate and

to reject defendant's credit offer under defendant's present procedures is for the consumer to subject himself to a lawsuit.

Schmerler Ford would have the court sidestep this insurmountable problem and hold that the financing discussions of October 1 are not an integral part of the sale to such a significant extent that a contractual relationship was created between the creditor and customer with regard to that financing. Defendant stresses that the sale could not possibly have been conditioned on its arranging specific financing whose terms were known to it, inasmuch as Schmerler Ford did not know for certain that Ford Motor Credit Corporation would approve Gonzalez's credit and inasmuch as defendant did not even negotiate an interest rate with plaintiff until October 3.

This argument asks us to overlook defendant's close relationship and intimacy with Ford Motor Credit Corporation and Duski's experience as a credit manager. Defendant must have been able to predict with some degree of accuracy which customers would receive credit and upon what type of terms. To the extent that defendant could not give sufficiently explicit details, it was protected by 12 C. F.R. 226.6(f), which provides:

> If at the time disclosures must be made, an amount or other item of information required to be disclosed, or needed to determine a required disclosure, is unknown or not available to the creditor, and the creditor has made a reasonable effort to ascertain it, the creditor may use an estimated amount or an approximation of the information, provided the estimate or approximation is clearly identified as such, is reasonable, is based on the best information available to the creditor, and is not used for the purpose

of circumventing or evading the disclosure requirements of this part.

Further, the term "specific financing" as used in Federal Reserve Board letter, No. 623, *supra*, cannot be construed in an overly narrow manner when the result of such a construction is to render sterile the disclosure requirements of the Truth in Lending Act in transactions like the one at bar. By having buyers sign a one-note when, in fact, a credit sale is contemplated, defendant has provided itself with "the best of both worlds" and effectively circumvented the Act. If no external financing can be arranged, defendant can threaten suit for cash based upon the October 1 document; if financing is arranged, buyer must negotiate his terms without benefit of prior disclosures for comparative credit shopping purposes, or else attempt backing out of the purchase at the risk of being sued on the October 1 document. Finally, we note that defendant always had the option on October 1, if it felt unable to disclose credit requirements or estimates thereof, to avoid signing plaintiff to a colorably binding contract, in which case it would be clear there was no sale on that date.

█ In sum, we find that financing was an integral part of the sale of the 1972 Pinto to plaintiff on October 1, and that defendant's procedures compelled credit disclosures on that date.

The parties have stipulated that the finance charge assessed in the transaction is $712.94. Pursuant to 15 U.S.C. A. § 1640, plaintiff is entitled to twice that amount, not to exceed $1,000.00, in addition to the costs of the action together with a reasonable attorney's fee, which we determine to be the sum of $300.00. An order shall enter conforming to this decision.