**Clarence T. HARDIN**

v.

**CLIFF PETTIT MOTORS, INC.**

**Civ. No. 3–75–273.**

United States District Court,
E. D. Tennessee, N. D.

Jan. 29, 1976.

18. An analogy to the suggested proceeding is found in New York C.P.L.R. § 5601(c).

Geoffrey D. Kressin, Watson, Kressin & Stanley, Knoxville, Tenn., for plaintiff.

Robert M. Stivers, Jr., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This action involves an alleged violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* The case was tried on stipulated facts and the Court entered judgment for plaintiff after hearing the arguments of counsel. Since the trial, the Court has considered the record in detail and has heard additional arguments from counsel. This memorandum supplements the memorandum delivered from the bench.

Plaintiff purchased a used 1974 Pontiac Grand Prix automobile from defend-

ant on May 18 or 19, 1975.[1] Defendant is a used car dealer doing business in Knoxville, Tennessee, and acted as a creditor at the times pertinent to this litigation. On May 19, 1975, plaintiff paid defendant the sum of $389.00 in cash as a partial down payment on the automobile. Plaintiff also executed a partially completed Bill of Sale, Exhibit 1 to the trial record, and took possession of the automobile. There was no difference in the terms of sale between the original oral negotiations on May 19 and the terms included in a conditional sales contract which was executed on May 30, 1975.

Prior to trial defendant alleged that plaintiff signed a one-installment non-interest-bearing note for the cash price of the car on May 19 which was payable to defendant on or before May 30. It was stipulated at the time of trial, however, that defendant could not prove by a preponderance of the evidence that the note was, in fact, executed.

At some time subsequent to May 19, an agent of defendant completed the credit terms on the Bill of Sale. Exhibit 3.

On May 30, plaintiff paid the balance due on the down payment ($211.00) in cash, bringing the total down payment to $600.00, and signed the conditional sales contract and note for the balance of $4,230.60 plus a finance charge of $1,088.04 and other charges of $36.00. The total amount ($5,354.64) was to be paid in thirty-six equal monthly installments of $148.74. It was stipulated that the conditional sales contract and note executed May 30 contained a full and complete disclosure as required by law.

Neither of the parties to the transaction on May 19 contemplated that the full balance due on the cash purchase price of the car would be paid by plaintiff on or before May 30. It was further contemplated by the parties that if plaintiff did not pay the $211.00 balance due on the down payment, no sale would

---

1. It is not material to the case which of the particular days the car was purchased. We will refer to the date hereafter as May 19, since that is the date set out on the Bill of Sale.

be made and the car would be returned to defendant.[2]

The primary question which must be answered is whether defendant was obligated to make the required disclosures at the time of the May 19 transaction.

The Act provides that disclosures "shall be made before the credit is extended . . . ." 15 U.S.C. § 1638(b). One of the underlying reasons for this timing requirement is that the Act is designed to promote the informed use of credit by consumers by assuring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him . . . ." 15 U.S.C. § 1601.

The regulations provide that "such disclosures shall be made before the transaction is consummated." 12 C.F.R. § 226.8(a).[3] A transaction is considered to be consummated "at the time a contractual relationship is created between a creditor and a customer irrespective of the time of performance of either party." 12 C.F.R. § 226.2(cc).

■ The Court of Appeals for the Sixth Circuit has interpreted the timing provisions of the Act as follows:

"In order to make the opportunity for comparison [of various credit terms] meaningful, the borrower must have the required information in his possession before he becomes committed to any particular lender . . .

\*　\*　\*　\*　\*　\*

"It . . . appears that a credit transaction which requires disclosures under the Act is completed when the lender and borrower contract for the extension of credit. The disclosures must be made sometime before this event occurs." *Wachtel v. West*, 476 F.2d 1062, 1065, cert. den. 414 U.S.

874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973).

It is conceded that during the time in question defendant acted as a "creditor" as that term is defined in the Act and the regulations. *See* 15 U.S.C. § 1602(f); 12 C.F.R. § 226.2(m). Defendant extended credit to plaintiff and then assigned the commercial paper to Manufacturers Acceptance Corporation—this too is conceded. The critical question that remains unanswered is *when* the agreement to extend credit was consummated.

■ We are convinced that under the facts and circumstances of this case credit was extended to plaintiff on May 19. On that date plaintiff agreed to credit terms, which were to be provided by the defendant. It was stipulated that sometime after the 19th the Bill of Sale was completed. Presumably it was completed by an agent of the defendant sometime prior to May 30.

Neither of the parties to the May 19 transaction contemplated that a cash sale was being made. The logical conclusion is that the parties agreed to a credit sale on that date, and the substance of the transaction was that defendant agreed to extend credit to plaintiff and give him possession of the automobile after payment of a partial down payment in return for plaintiff's promise to tender the balance of the down payment and to execute a conditional sales contract on May 30.

We therefore conclude that the credit transaction was consummated on May 19 notwithstanding the fact that the time of performance of the agreement may not have been on that date. *See* 12 C.F.R. § 226.2(cc); *Bissette v. Colonial Mortgage Corp. of D. C.,* 155 U.S.App. D.C. 360, 477 F.2d 1245 (1971); *Postow v. Oriental Building Assoc.,* 390 F.Supp. 1130 (D.D.C.1975). This conclusion is buttressed by the fact that when defend-

---

2. There was no stipulation concerning whether or not the partial down payment of $389.00 would have then been returned to the plaintiff if he had not tendered the balance of the purchase price.

3. The regulations were promulgated by the Board of Governors of the Federal Reserve System pursuant to 15 U.S.C. § 1604 and are commonly referred to as "Regulation Z." (12 C.F.R. § 226.1 et seq.)

ant's agent filled out the Application for Certificate of Title and Registration for plaintiff the date given as the date of the conditional sales contract ("CSC") was May 19. Exhibit 5.

Defendant takes the position that payment of the balance of the down payment on May 30 was a condition precedent to its agreement to extend credit to plaintiff. We cannot agree. The existence or nonexistence of a condition precedent or concurrent condition normally does not affect the validity of an existing contract. The term "condition" is ordinarily reserved to describe acts or events which must occur before a duty of performance under an existing contract becomes absolute. Restatement, Contracts § 250(a). In this case the contract to extend credit was consummated on May 19 and the validity of that original agreement was not dependent on the fulfillment of the condition in question.

■ Defendant further contends that if an oral agreement to extend credit was made on the 19th, the same did not constitute a valid, binding contract under the Statute of Frauds. Assuming, *arguendo*, that the Tennessee Statute of Frauds has some application to this nondiversity case, we are of the opinion that the Bill of Sale was a sufficient written memorandum to take the sale of the car out of the operation of the statute. T.C.A. § 47–2–201(1).[4] Further, the oral agreement to extend credit was collateral to the sale of the car and an induce-

ment for the entire bargain. We view the terms of the agreement to extend credit as being consistent with and additional to the written terms contained on the Bill of Sale executed on the 19th. T.C.A. § 47–2–202(b).

Moreover the conduct of the parties indicates that a firm commitment to extend credit was made on the 19th. T.C.A. § 47–2–201(3)(c). Plaintiff took possession of the automobile after making only a $389.00 down payment at a time when both parties contemplated that a credit sale was being made, and pursuant to the understanding of the parties he executed a conditional sales contract on May 30.

Defendant's final contention that any failure to disclose on May 19 was cured by the May 30 disclosure pursuant to 15 U.S.C. § 1640(b) was resolved against defendant in the Court's Memorandum denying its motion to dismiss or alternatively for summary judgment.

For the reasons stated above, plaintiff is entitled to recover the sum of $1,000.00 from the defendant. 15 U.S.C. § 1640(a). Additionally, since liability was established in this case, plaintiff is entitled to recover a reasonable attorney's fee. *Id.* The Court fixes that fee at $612.50 as the attorney for defendant has agreed that such is a reasonable and fair fee in this case if liability is established, and the Court agrees.

Order accordingly.

---

4. The transactions in question here involved the sale of goods. The applicable Statute of Frauds is T.C.A. 47–2–201 which provides, in pertinent part, as follows:

"*Formal requirements—Statute of frauds.*— (1) Except as otherwise provided in this section a contract for the sale of goods for the price of five hundred dollars ($500) or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

\* \* \* \* \* \*

"(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable.

\* \* \* \* \* \*

"(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (§ 47–2–606)."