**Erasmo PARTIDA, Plaintiff,**

v.

**WARREN BUICK, INC., Defendant.**

**No. 77 C 1596.**

United States District Court,
N. D. Illinois, E. D.

Aug. 9, 1978.

Genaro Lara, Chicago, Ill., for plaintiff.

Edward W. Nicewick, Ronald L. Lipinski, Plunkett, Nisen, Elliott & Meier, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MARSHALL, District Judge.

This is an action by Erasmo Partida against Warren Buick, Inc., a Chicago automobile dealer from whom Partida purchased a new Buick Century (Pltf. Complaint, pp. 2–3). Plaintiff's complaint is in three counts. In Count I he alleges violations of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, and Federal Regulation Z, 12 C.F.R. 226, § 1 *et seq.* Count II alleges a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill. Rev.Stat., ch. 121½ § 261 *et seq.* In Count III, plaintiff alleges fraud in the inducement to enter into the contract to purchase the car. Jurisdiction of Count I is conferred by 15 U.S.C. § 1640(e). Jurisdiction over the state law claims of Counts II and III is premised on pendent jurisdiction because the claims arise from the same transaction which gives rise to the federal law claim.

Defendant has moved to dismiss the complaint asserting that any violations of 15 U.S.C. § 1601 *et seq.* occurred on May 3, 1976, with the result that the complaint, filed May 6, 1977, is time barred under 15 U.S.C. § 1640(e). That section provides that actions under the Truth in Lending Act must be brought "within one year from the date of the occurrence of the violation." Because the parties executed instruments for the purchase of the car on both May 3, 1976 and May 7, 1976, the issue for decision on the motion is whether any actionable violations of the Act occurred within one year of the filing of the complaint.

The facts, as alleged by plaintiff, are that on or about May 3, 1976, plaintiff and defendant entered into a consumer credit transaction which consisted of the credit sale of a new 1976 Buick Century automobile. On May 3, both parties signed an "order" for the car (Pltf.'s Exhibit A). The "order" shows a total cash price of $5,049.25 and a downpayment of $10 with an additional $1,900 downpayment due from plaintiff on May 7. Although the order described the car plaintiff planned to trade in as part of the purchase price, the order does not indicate the amount of the seller's trade-in allowance. Another section of the order contains the notation "36 monthly Pay. at $105.02, A.P.R. 14.54, No Insurance, 1st payment June 20th." Plaintiff's signature appears at the end of this section as well as on the line marked "purchaser's signature."

The back of the order includes further terms of the contract. Paragraph 11 states

that "The purchaser before or at the time of delivery of the motor vehicle covered by this Order will execute such other forms of agreement or documents as may be required by the terms and conditions of payment indicated on the front of this Order." Paragraph 5 provides for liquidated damages to the seller if the purchaser refuses to comply with the terms of the order or to accept delivery of the car. This paragraph indicates that, although the instrument is labelled an "order," the plaintiff was bound to purchase the car at the specified terms once the defendant or his agent approved the order.

The plaintiff alleges that on May 7, 1976, he made an additional downpayment of $2,000 (Pltf.'s Exhibit B). On May 7, the plaintiff signed a Retail Installment Contract which stated a cash price of $5,749.25 and a total downpayment of $2,700, consisting of $2,000 cash and $700 trade-in allowance (Pltf.'s Exhibit C). The unpaid balance is stated as $3,049.25 with a finance charge of $731.47 bringing the total of payments to $3,780.72. The number and amount of the monthly payments are the same as those noted in the order.

The plaintiff alleges that in the course of these transactions the defendant violated the Truth in Lending Act, 15 U.S.C. §§ 1631, 1638(a)(2) and Federal Regulation Z, 12 C.F.R. 226.8. The alleged violations are: failure to disclose the total deferred price, annual percentage rate and amount of trade-in allowance; failure to provide the plaintiff with a duplicate of the instrument containing the required disclosures; and failure to disclose the $10 downpayment made by plaintiff on May 3, 1976. The complaint does not allege the specific dates on which these violations occurred. However, in plaintiff's memorandum in opposition to the motion to dismiss, he states that the failure to disclose the $10 downpayment and to provide a duplicate of the disclosure document occurred on May 7, 1976.

In its motion to dismiss, defendant asserts that any violations of the Act occurred on May 3, 1976, and that the action, filed on May 6, 1977, was not brought within one year of the occurrence of these violations. Defendant contends that the duty to disclose arises at the time of the consummation of a consumer credit transaction and that any violation of the Act occurs at that time. Defendant claims that under the facts as alleged by the plaintiff the consumer credit transaction in this case was consummated on May 3, 1976, and plaintiff was required to bring his action within one year of that date. Defendant also moves for dismissal of the state law claims of Counts II and III because the only basis for federal jurisdiction over these counts is pendent jurisdiction. If the federal law claim of Count I is dismissed, the defendant asserts that *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), requires dismissal of the state claims for lack of independent jurisdiction.

In determining whether to grant the defendant's motion, we must first examine the language of the statute and regulations pertaining to the timing of disclosures. The Truth in Lending Act requires a creditor to make disclosures of credit terms before credit is extended. 15 U.S.C. § 1638(b). The disclosures may be made "in a contract or other evidence of indebtedness which is signed by the purchaser." 15 U.S.C. § 1638(b). Because the purpose of the Act is to permit informed credit shopping by the consumer, 15 U.S.C. § 1601, the disclosures should be made "before the transaction is consummated." 12 C.F.R. § 226.8. The Board of Governors of the Federal Reserve System, in issuing regulations for enforcement of the Act, said

A transaction shall be considered consummated at the time a contractual relationship is created between a creditor and a consumer . . . 12 C.F.R. § 226.-2(kk).

Defendant's motion to dismiss presumes that because the duty to disclose arises at the time the transaction is consummated none of the defendant's subsequent acts can constitute separate violations. However, nothing in the statutory or regulatory language limits violations to the time of the consummation of the transaction.

In support of its contention that the consumer credit transaction in this case was consummated on and that any violations of the Act occurred on May 3, 1976, the defendant cites *Gonzalez v. Schmerler Ford*, 397 F.Supp. 323 (N.D.Ill.1975). In *Gonzalez*, the parties executed a document for the purchase of a car on October 1. That document indicated that a $10 downpayment had been made with the balance of the purchase price due on October 3. On October 3, the parties executed an installment sales contract which included all the disclosures required by the Act. The defendant seller claimed that it had no duty to make disclosures prior to the execution of the installment contract on October 3. The court found that on October 1 both parties contemplated a credit sale and therefore a consumer credit transaction was consummated within the meaning of the Act although the written credit contract was not yet executed. Therefore, the statutory disclosures were required on October 1 and the seller's failure to make them was a violation of the Act.

Although the basic fact situation of *Gonzalez* was similar to that in the present case, the *Gonzalez* court was confronted by an entirely different issue. There the issue was not whether the plaintiff's claim was barred by the statute of limitations but rather whether the plaintiff could assert that the defendant had violated the Act by failing to make disclosures prior to the execution of the installment contract. The basis of the court's holding was that the seller should not be allowed to bind the buyer to what is in fact a credit sale by the execution of what purports to be merely a sales contract without disclosing to the buyer what the credit terms will be when the installment contract is ultimately signed.[1] The court said

By having buyers sign a one-note when, in fact, a credit sale is contemplated, defendant has provided itself with "the best of both worlds" and effectively circumvented the Act. If no external financing can be arranged, defendant can threaten suit for cash based upon the October 1 document; if financing is arranged, buyer must negotiate his terms without benefit of prior disclosures for comparative credit shopping purposes, or else attempt backing out of the purchase at the risk of being sued on the October 1 document. 397 F.Supp. at 328.

While this reasoning would support a claim by plaintiff that the defendant was required to make disclosures on May 3, it does not require dismissal of any claims based on violations in the May 7 Retail Installment Contract. Nothing in the *Gonzalez* opinion indicates that any violations in the installment contract would be ignored because the contractual relationship between the parties had been "consummated" on an earlier date. Therefore, the *Gonzalez* decision is not persuasive authority for holding in the present case that any violations alleged to have occurred on May 7, 1976, are outside the scope of the Act's prohibitions. Because the complaint can be construed to allege violations which occurred after May 3, 1976, it is not necessary to determine at this time whether the transaction was consummated on May 3, 1976. Even if that was the date of "consummation," the plaintiff has alleged violations which may have occurred after the consummation of the contractual relationship.

Although no reported cases deal with the question of violations which occur *after* the consummation of a retail credit transaction, the public policy of promoting

---

1. The same conclusion as to the timing of disclosures was reached in *Hardin v. Cliff Pettit Motors, Inc.*, 407 F.Supp. 297 (E.D.Tenn.1976). As in *Gonzalez*, the buyer sought to hold the seller liable for failure to make disclosures prior to the execution of the credit contract. The court agreed that disclosures were necessary at the time of the purchase agreement to effectuate the Act's purpose of assuring informed consumer shopping for credit. However, in *Phil-

beck v. Timmers Chevrolet, Inc.*, 361 F.Supp. 1255 (N.D.Ga.1973), *rev'd on other grounds*, 499 F.2d 971 (5th Cir. 1974), the court rejected the buyer's contention that the Truth in Lending disclosures must be made at the time the "Retail Buyer's Order" was executed. The court said that the order made no pretense of compliance with the Act because the credit agreement was not yet completed.

informed consumer credit shopping underlying the Act can be fully effectuated only if such claims are allowed. In the present case, the terms of the May 3, 1976 contract required the plaintiff to execute the May 7 contract or forfeit any downpayment he had made as well as his trade-in car if that had already been turned over to the defendant. The order signed on May 3 allows the plaintiff to cancel without penalty only if the "cash delivered price"[2] is changed and not if any of the other terms of sale are changed. If the seller is free to insert the terms of its choosing in the second contract without fear of violating the Act, the protections of the Act will be meaningless. As part of the relatively informal order the seller could insert any credit terms it thought necessary to effectuate the sale, knowing that the subsequent retail installment contract required by the order would reflect quite different terms. In an extreme case, the initial contract could require the execution of later contracts, some of which would not even be signed until after the one-year statute of limitations had run. Such a result would clearly not comport with the Act's purpose of assuring "a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit." 15 U.S.C. § 1601.

Allowing the buyer to bring an action for the seller's failure to make disclosures after the initial contract is signed is consistent with the policy expressed in *Gonzalez* and in *Goldman v. First National Bank of Chicago*, 532 F.2d 10 (7th Cir. 1976), the only reported cases in the Seventh Circuit to deal with the question of when a violation of the Act occurs. Unlike *Gonzalez*, the issue in *Goldman* was whether the one-year statute of limitations had run prior to the filing of the plaintiff's claim.

Although the credit transaction in *Goldman* was an open end plan as opposed to the closed end plan in the present case, much of the court's reasoning applies to cases like the present one where more than one instrument is required to establish the contractual relationship.[3] In *Goldman*, plaintiff applied for a BankAmericard on April 3, 1970. The application included a "Disclosure Statement As Required by the Federal Truth-In-Lending Act" and the bank's contract with cardholders. Plaintiff received his card a short time later and made his first purchases with it in July, 1970. Because plaintiff paid the monthly bills promptly until February, 1971, no finance charge was imposed until the March, 1971 billing statement. Plaintiff filed his complaint in July, 1971. When the bank raised the defense of the statute of limitations, plaintiff argued that although the original disclosure of the finance charge had been made in the April, 1970 application, there was no way for him to discover that it had been misstated until a finance charge had been imposed. Therefore, the statute of limitations should not begin to run until the violation could be discovered. The court agreed with plaintiff that "when, as here, there has been an incomplete, inaccurate or misleading disclosure, the limitations period should not be measured from the date the disclosure was required by law to be made, but instead by the date on which a finance charge was first imposed." *Goldman* at 21. The court emphasized that while the imposition of a finance charge was clearly an event which could give rise to a suit under the Act, it was not the only event which might give rise to an action.

In reaching its conclusion, the *Goldman* court focussed on the Act's purpose of pro-

---

**2.** Defined in ¶ 2 of Pltf.'s Exhibit A as the price quoted by the manufacturer to the dealer.

**3.** The *Goldman* court defined an open end credit plan as

One in which credit terms are initially established with the opening of the account, but no fixed amount of debt is incurred at the time. Purchases made from time to time are added to the outstanding balance in the account and each new purchase represents an additional extension of credit under the terms as originally defined in the credit agreement. 532 F.2d at 17, n. 11

Under a closed end plan such as the one in the present case, the full amount of indebtedness is set at the time of contracting.

moting the "informed use of credit." 532 F.2d at 21. This purpose is furthered in the present case only if plaintiff is permitted to maintain his action for any violations which occurred as a part of the May 7, 1976 transaction. On May 3, 1976, the plaintiff could not have known that the contract he was required to execute on May 7 might not contain all of the disclosures required by the Act. A consumer cannot make an "informed use of credit" if he can be required to sign a contract which is beyond the reach of the Act because it is signed after the transaction is "consummated." Nothing in *Goldman* or the Act mandates that there can be no violations of the Act after the transaction is "consummated" within the meaning of Regulation Z. 12 C.F.R. § 226.-8.

Therefore, we hold that plaintiff is not barred from bringing an action for any violations of the Act which may have occurred on May 7, 1976. However, if the defendant was required to make disclosures on May 3, 1976, any violations of that duty would be barred by the statute of limitations.[3] The plaintiff will be permitted to prosecute his action only as to those violations which occurred after May 6, 1976. Because there is jurisdiction over the federal law claim of Count I, pendent jurisdiction over the state law claims of Counts II and III is appropriate.

The motion to dismiss is denied; defendant to answer in twenty (20) days; cause set for report on status October 24, 1978 at 9:30 a. m.

---

**3.** This opinion does not adopt the theory of "continuing violations" under which there is a violation until the defendant actually makes the required disclosures. In *Goldman v. First National Bank of Chicago*, 532 F.2d 10, 20 (7th Cir. 1976), the court rejected the theory at least in the context of open end credit plans. The theory was rejected in an action resulting from a closed end plan in *Wachtel v. West*, 476 F.2d 1062 (6th Cir. 1973).