Daisy E. YOUNG and Vicki L. Young, Plaintiffs,

v.

NORTHLAND MORTGAGE COMPANY, Defendant.

Civ. No. 4-78-30.

United States District Court, D. Minnesota, Fourth Division.

Dec. 14, 1978.

Richard J. Fuller, Minneapolis, Minn., for plaintiffs.

Jerome B. Simon, Richard M. Gaalswyk, St. Paul, Minn., for defendant.

## MEMORANDUM AND ORDER

MacLAUGHLIN, District Judge.

This matter comes before the Court on defendant's motion for summary judgment. Argument on the motion was heard September 27, 1978. Based on the record and files in this cause and the argument and memoranda of counsel, the Court, finding no genuine issue of material fact, grants summary judgment for defendant.

The facts are undisputed. In October, 1975, Lloyd L. Young executed a real-estate mortgage to defendant Northland Mortgage Co. for a loan of $19,400. On January 21, 1977, Lloyd Young conveyed the mortgaged property to plaintiffs, Daisy E. Young and Vicki L. Young. In the deed, plaintiffs "assume[d] and agree[d] to pay [the mortgage] according to its terms." Defendant was unaware of this transaction until April 19, 1978, when Lloyd Young notified defendant that he was "contemplating" conveying the property to plaintiffs.[1]

On April 22, 1978, defendant provided plaintiffs with a document entitled "Transfer of Ownership." The document in-

formed plaintiffs of the status of payments under the mortgage. It also required that plaintiffs furnish the following items to defendant before the change in ownership of the mortgaged property would be reflected in defendant's records:

1. Assignment & Disclaimer of the escrow funds.
2. Credit Information/Financial Statement of buyer.
3. Insurance policy/binder with a paid receipt for the first year or the insurance assignments. ACCEPTED ONLY IF SIGNED BY AGENT.
4. Copy of the Warranty Deed, Contract for Deed or Over-all Contract for Deed to purchasers.
5. Check in the amount of $35.00 for our service fee.

(Def. Answers to Second Set of Interrogatories, Ex. E) On May 10, 1977, defendant was for the first time informed of the conveyance of January 21, 1977. Shortly thereafter defendant received plaintiffs' remittance of the service fee and, apparently, also received the other requested items. Defendant changed its records concerning ownership of the property and began billing plaintiffs directly on June 20, 1977.

Plaintiffs commenced this action on January 19, 1978, seeking damages for alleged violations of the Federal Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. Defendant concedes that it did not make disclosures of credit information to plaintiffs, but argues that disclosure was not required in the circumstances, or that, if failure to disclose was a violation of the Act, liability is excused by defendant's good-faith conformity with agency interpretation of the Act's requirements, see 15 U.S.C. § 1640(f). Thus, the sole issue raised by the motion is whether, under the facts of this case, defendant mortgagee had a duty to disclose credit information to the grantee of its mortgagor. Jurisdiction over the subject matter of this action derives from 15 U.S.C. § 1640(e).

---

1. In fact, as stated above, Young had transferred the property by warranty deed to the plaintiffs on January 21, 1977. Why Young informed defendant that he was "contemplating" transfer of the property, when in fact a transfer had been completed on January 21, 1977, is not disclosed by the record.

The Truth-in-Lending Act was designed to enable a consumer to make an informed choice among offerings of credit. Congress declared its purpose as follows:

> The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices.

15 U.S.C. § 1601(a). See also, *Mourning v. Family Publications Service, Inc.,* 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Joseph v. Norman's Health Club, Inc.,* 532 F.2d 86, 90 (8th Cir. 1976). A comparison among available credit terms is meaningful only if disclosure of the terms precedes the extension of credit by a lender and the resulting contractual obligation of the borrower. Section 129(b) of the Act recognizes the importance of the timing of the disclosure of credit terms:

> Except as otherwise provided in this part, *the disclosures required by subsection (a) of this section shall be made before the credit is extended,* and may be made by disclosing the information in the note or other evidence of indebtedness to be signed by the obligor.

15 U.S.C. § 1639(b) (emphasis added). Accord, 12 C.F.R. § 226.8(a); *Wachtel v. West,* 476 F.2d 1062, 1065 (6th Cir.) *cert. denied,* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973); *Copley v. Rona Enterprises, Inc.,*

423 F.Supp. 979, 982–83 (S.D.Ohio 1976); *Hardin v. Cliff Pettit Motors, Inc.,* 407 F.Supp. 297 (E.D.Tenn.1976). See, *Bissette v. Colonial Mortgage Corp.,* 155 U.S.App. D.C. 360, 477 F.2d 1245 (1973); *Burgess v. Charlottesville Savings & Loan Ass'n,* 477 F.2d 40, 44–45 (4th Cir. 1973).

In the instant case, Lloyd Young conveyed the mortgaged property to plaintiffs on January 21, 1977. Under Minnesota law, plaintiffs assumed the mortgage at that time because of the clause to that effect in the deed, quoted at page 1176, supra. E. g., *Heidahl v. Geiser Manufacturing,* 112 Minn. 319, 127 N.W. 1050 (1910); *Bursell v. Morgan,* 181 Minn. 462, 233 N.W. 12 (1930).[2] Under Minnesota law, therefore, plaintiffs became obligated under the mortgage three months before defendant was aware that conveyance of the property was contemplated.

There are circumstances under which the Truth-in-Lending Act requires disclosure of credit terms to an assignee of the original obligor. Regulation Z, 12 C.F.R. pt. 226, requires such disclosure when the creditor accepts the assignee as an obligor:

> (k) Assumption of an obligation. Any creditor who accepts a subsequent customer as an obligor under an existing obligation shall make the disclosures required by this part to that customer before he becomes so obligated. If the obligation so assumed is secured by a first lien or equivalent security interest on a dwelling, and the assumption is made for the subsequent customer to acquire that dwelling, that obligation shall be considered a loan made to finance the purchase of that dwelling.

12 C.F.R. § 226.8(k). The Federal Reserve Board interprets such acceptance to occur only when there exists a written agreement between the creditor and assignee:

**2.** In *Bursell v. Morgan,* supra, the Court stated as follows at page 464, 233 N.W. at page 13:

> When Nellie A. Betts conveyed to Charles Morgan and Dick Peters and they assumed and agreed to pay the mortgage in question, they, as between the parties to the conveyance, became the principal obligors for payment of the mortgage debt and Nellie A. Betts became surety for them. . . . A mortgage assumption clause in a deed imposes a direct, primary liability and is not a mere contract of indemnity. The agreement imposes the same liability on the grantees in the deed as if they had given the mortgage.

For the purposes of § 226.8(k), an "assumption" occurs only when, by written agreement entered into between a subsequent customer and the creditor, that subsequent customer is or will be accepted by that creditor as an obligor on an existing evidence of debt. . ᵐ· .

12 C.F.R. § 226.807(b). Since the promulgation of this interpretation in June, 1969, the Board through staff letters issued in response to inquiries about the Act has consistently adhered to this position.[3] The Federal Reserve Board's interpretation of the requirements of the Truth-in-Lending Act although not binding are accorded substantial deference by courts. See, e. g., *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973); *Griffith v. Superior Ford*, 577 F.2d 455, 458 (8th Cir. 1978); *Johnson v. McCrackin-Sturman Ford, Inc.*, 527 F.2d 257, 267 (3d Cir. 1975); *Anthony v. Community Loan & Investment Corp.*, 559 F.2d 1363, 1367 (5th Cir. 1977); *Taylor v. R. H. Macy & Co.*, 481 F.2d 178 (9th Cir.), *cert. denied*, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973).

Plaintiffs argue that a written agreement is present in defendant's transmittal of the document entitled "Transfer of Ownership" in April, 1977, and in plaintiffs' response received by defendant the following month. After receiving notice in April of the "contemplated" transfer, plaintiff argues, defendant had one month to make disclosures before the transfer was completed in May. (In fact, of course, the transfer was completed on January 21, 1977, when a warranty deed was delivered by Young to the plaintiffs.) Assuming arguendo that the exchange of documents constitutes a written agreement fulfilling the requirements of 12 C.F.R. § 226.807, the Court finds nevertheless that defendant was not required under the Act to make disclosure of credit terms to plaintiffs.

■■■ Plaintiffs' argument is premised on the assumption that they did not become obligated under the mortgage until defendant accepted them as obligors in May. In fact, however, plaintiffs assumed the mortgage and were bound by its terms as primary obligors in January, 1977. Thus, disclosure in May, 1977, of the credit terms of the mortgage would not have advanced the purposes of the Act.[4] It is instructive to note that Regulation Z mandates that a creditor who accepts the assignee of the original obligor make disclosures *before* the assignee becomes bound under the existing obligation. 12 C.F.R. § 226.8(k) (quoted at page 1177 supra). Plaintiffs reasonably do not advance the argument that defendant

---

3. See, FRB Letter No. 1183, CCH Consumer Credit Guide ¶ 31,595 (May 5, 1977); FRB Letter No. 1012, CCH Consumer Credit Guide ¶ 31,354 (Mar. 5, 1976); FRB Letter No. 808, CCH Consumer Credit Guide ¶ 31,130 (May 30, 1974); FRB Letter No. 731, CCH Consumer Credit Guide ¶ 31,050 (Nov. 21, 1973); FRB Letter No. 459, CCH Consumer Credit Guide ¶ 30,657 (Mar. 23, 1971); FRB Letter, CCH Consumer Credit Guide ¶ 30,624 (Jan. 26, 1971); FRB Letter No. 229, CCH Consumer Credit Guide ¶ 30,260 (Jan. 7, 1970); FRB Letter No. 219, CCH Consumer Credit Guide ¶ 30,245 (Dec. 30, 1969); FRB Letter No. 171, CCH Consumer Credit Guide ¶ 30,203 (Oct. 24, 1969); FRB Letter No. 129, CCH Consumer Credit Guide ¶ 30,477 (Sept. 29, 1969); FRB Letter No. 72, CCH Consumer Credit Guide ¶ 30,134 (Aug. 20, 1969). See also, FRB Letter, CCH Consumer Credit Guide ¶ 30,008 (Mar. 25, 1969); *Reyes v. Carver Federal Savings & Loan Ass'n*, 74 Misc.2d 323, 344 N.Y.S.2d 501 (N.Y. Sup.Ct.1973), summarized in CCH Consumer Credit Guide ¶ 98,973.

4. At oral argument, plaintiffs suggested that disclosure of credit terms after a consumer has become contractually bound would provide helpful information regarding the desirability of refinancing the credit arrangement. Although disclosure after the fact might achieve such salutary purpose, the Court finds that the Truth-in-Lending Act is designed to provide credit information only before the consumer becomes obligated, see page 1177 supra, and that plaintiffs' policy argument is thus better directed to Congress or the Federal Reserve Board.

Disclosure after consummation of a transaction is in the creditor's interest in some circumstances. Where the consumer has a right to rescind the transaction, delivery of adequate disclosures will limit the period in which rescission is permitted. See, 15 U.S.C. § 1635(a), (f); 12 C.F.R. § 226.9(a), (h); *LaGrone v. Johnson*, 534 F.2d 1360 (9th Cir. 1976). The Act does not grant plaintiffs a right of rescission in this case. See, 15 U.S.C. § 1635(e); 12 C.F.R. § 226.8(k).

should have disclosed credit terms at the time of conveyancing in January, an event defendant did not learn of until some months later.

The Truth-in-Lending Act is designed to furnish consumers with credit information so that discriminating use of credit is possible. Disclosure of credit terms after a consumer has become contractually bound to those terms is of no assistance in light of the purposes of the Act, and the Court will not impose a duty of disclosure resulting in civil liability in such circumstances. Defendant mortgagee had no reason to believe that conveyance of the mortgaged property would occur in January and that disclosures under the Truth-in-Lending Act might therefore be required. Because the Court finds that defendant had no duty to disclose credit information under the Truth-in-Lending Act, it does not reach the issue of a good-faith defense under 15 U.S.C. § 1640(f).

For the reasons advanced above, IT IS ORDERED that the motion of defendant for summary judgment be and hereby is granted.

LET JUDGMENT BE ENTERED ACCORDINGLY.