JACQUELINE M. GRIMALDI, Plaintiff-Appellant, v. PATRICK WEBB, JR., *et al.*, Defendants-Appellees.

First District (1st Division)   No. 1—94—0277

Opinion filed June 24, 1996.—Rehearing denied August 1, 1996.

Edelman & Combs (Daniel A. Edelman, Cathleen M. Combs, O. Randolph Bragg, Tara G. Redmond, J. Eric Vander Arend, and Michelle A. Weinberg, of counsel), and Lawrence Walner & Associates, both of Chicago, for appellant.

Wildman, Harrold, Allen & Dixon, of Chicago (Steven E. Danekas, Richard D. Murphy, Jr., and Kevin B. Reid, of counsel), for appellees.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Jacqueline Grimaldi, appeals the dismissal of her complaint against defendants, Patrick Webb, Jr., Patrick Webb, Sr., Gregory J. Webb, and W.E.W. Leasing Company, individually and doing business as Packey Webb Ford (Packey Webb), and Ford Motor Credit Company, after she purchased a car from Packey Webb. In count I, plaintiff alleged that Packey Webb violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/2 (West 1992)), by engaging in a "policy and practice" of having consumers sign binding purchase orders before their financing terms were disclosed. In count II, plaintiff complained that Packey Webb violated the Consumer Fraud Act by misrepresenting the amounts disbursed to entities that issue extended warranties or service contracts, thereby allowing dealers to overcharge consumers for such extended warranties. In count III, plaintiff alleges that Ford Motor Credit Company (FMCC) violated section 8.9 of the Sales Finance Agency Act (205 ILCS 660/8.9 (West 1992)), by "acquiescing in" and "approving of" Packey Webb's misrepresentations regarding the cost of the extended warranty, thereby increasing the amount of credit extended by FMCC. The circuit court granted Packey Webb's and FMCC's motions to dismiss, and dismissed plaintiff's amended complaint with prejudice on January 12, 1994. Plaintiff filed her timely

notice of appeal on January 19, 1994. For the reasons that follow, we reverse in part and affirm in part.

BACKGROUND

Plaintiff alleged the following facts in her amended complaint. On December 26, 1989, plaintiff agreed to purchase, on time, a new Ford Tempo from Packey Webb. Plaintiff signed a purchase order and took possession of the new car. Packey Webb took possession of her trade-in, and plaintiff paid $150 as a down payment. Packey Webb agreed to undertake financing for plaintiff, although the financing terms were not disclosed on December 26.

The purchase order signed by plaintiff was a printed form document, which indicated that it had been put into use in July 1988. The purchase order stated that plaintiff was given $3,000 in "Total Credits" to be applied against the price of the new car. The "Total Credits" consisted of a $150 down payment made on December 26, 1989, an additional $1,850 to be paid at an undisclosed time, and a "Rebate" of $1,000. Plaintiff paid the additional $1,850 on or about December 27, 1989. The boxes provided on the purchase order to designate whether plaintiff intended to pay cash or have Packey Webb arrange financing were not checked.

Plaintiff alleged that most people who buy cars from Packey Webb must do so on credit, which Packey Webb undertakes to secure in many cases. She further alleged that through Packey Webb's experience in securing financing, it knows the terms and interest rates for which customers are eligible, and at the time she executed the purchase order, Packey Webb could have provided her with an accurate estimate of the credit terms she would be offered. Plaintiff informed the salesperson on December 26, 1989, that she wanted an interest rate lower than the 11% she had paid on the purchase of her trade-in, a 1986 Thunderbird.

On December 28, 1989, plaintiff returned to Packey Webb to sign her financing papers. Upon her arrival, she was informed that she would have to renegotiate the deal because the financing applied for by Packey Webb was not available. A Packey Webb representative originally told her she would have to accept an interest rate of 15%. Plaintiff responded that she wanted to rescind the contract, return the new car, retrieve her trade-in, and resolve any charges for her use of the new car. Packey Webb refused to allow her to do so, stating that she had accepted the new car and could not rescind the deal. Plaintiff was subsequently offered a rate of 11%, and after further protest, was told that the lowest rate available was 9.9%. Plaintiff understood that the deal she negotiated would incorporate both an

interest rate of 9.9% and the rebate of $1,000 listed in her purchase order. Plaintiff signed the retail installment contract prepared by Packey Webb on a standard FMCC printed form, while under the impression that she was bound to buy the new car.

The retail installment contract contains no reference to a rebate, which was expressly included in the terms of the purchase order. Plaintiff claimed that the failure to give plaintiff the rebate effectively increased the price she paid for the car by $1,000. Plaintiff returned to Packey Webb and paid the $1,000 approximately one week later.

In obtaining plaintiff's signature on the retail installment contract, Packey Webb represented that the amount it paid for the extended warranty was $595 and that the amount was nonnegotiable. The retail installment contract included the following entry:

**"Amounts Paid on Your Behalf**

\* \* \*

To <u>FORD MOTOR COMPANY</u> for <u>EXT. SERVICE PLAN</u> $595.00

\* \* \*."

Plaintiff asked about prices for extended warranties on the car she was purchasing. Packey Webb quoted a price of $595 for the warranty that plaintiff eventually purchased. Plaintiff asked whether the price was negotiable and was told that the price was fixed by FMCC and was a charge over which Packey Webb had no control.

Plaintiff alleged that Packey Webb did not pay $595 to Ford Motor Company for her extended warranty, nor was the price of the plan fixed by FMCC and beyond the power of Packey Webb to negotiate. Plaintiff alleged that the actual cost of the warranty was only $150, and the manufacturer's suggested retail price was only $270, as stated in a May 1990 study conducted by the New York Attorney General entitled "Dealer Pricing Practices in the Sale of Automobile Extended Service Contracts: Consumers Are Paying Too Much."

Plaintiff claimed that the representation of Packey Webb had the tendency and capacity to deceive consumers into not negotiating a lower price for the extended warranty and, thus, of causing consumers to pay excessive prices for extended warranties. Plaintiff further alleged that she had suffered injury as a result of Packey Webb's practices.

As to FMCC, plaintiff alleged that pursuant to the retail installment contract, FMCC is liable for the conduct of Packey Webb, irrespective of any fault on the part of FMCC. Plaintiff further alleged that FMCC engaged in wrongful conduct on its part in that it "acquiesced in" and "approved of" the representations made by

Packey Webb regarding the amounts remitted to "Ford Motor Company" for extended warranties. Plaintiff claimed that because FMCC reviews individual retail installment contracts prior to accepting assignments of the contracts and receives the contracts after assignment, it is aware that the contracts contain misleading disclosures regarding the amounts paid to "Ford Motor Company" for the extended warranties. Finally, plaintiff alleged that since the inflated amounts charged for the extended warranties became part of the amount financed under the retail installment contracts, FMCC directly benefits from the overcharges by receiving more in finance charges.

DISCUSSION

In reviewing a motion to dismiss, this court must take all facts properly pleaded in the complaint as true and determine whether the complaint sufficiently states a claim upon which relief can be granted. *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 26-27, 585 N.E.2d 51, 62 (1991). A cause of action should not be dismissed "unless it clearly appears that no set of facts can be proved which will entitle plaintiffs to recover." *Daley*, 146 Ill. 2d at 11, 585 N.E.2d at 55.

Count I

■ The circuit court expressly adopted Packey Webb's arguments in dismissing count I. Packey Webb had argued that the agreement to purchase a car and the financing agreement were two separate transactions and that there were no material differences between the purchase order signed by plaintiff and the subsequently executed retail installment contract.

The trial court agreed with Packey Webb that no Consumer Fraud Act violation occurred because Packey Webb could not quote final finance rates at the time plaintiff executed her purchase order and plaintiff was free to reject any financing Packey Webb offered. The trial court further determined that although plaintiff alleged that she understood a deal involving an interest rate of 9.9% would incorporate the $1,000 rebate described in the purchase order, the fact that plaintiff also alleged that she had to pay an additional $1,000 to effectuate the deal meant that plaintiff had renegotiated the deal and had given up her $1,000 rebate in executing the retail installment contract.

We believe the trial court erred in making these factual determinations. Whether or not Packey Webb could have disclosed financing terms likely to be offered to plaintiff was a question of fact

that the trial court was not able to resolve on a motion to dismiss. Further, even if Packey Webb was unable to disclose such terms, that does not mean that Packey Webb's conduct in this case was not misleading. The trial court's finding regarding plaintiff's ability to renegotiate the contract and the rebate similarly went beyond the complaint.

■ In addition, we find that there was an issue of fact as to whether plaintiff's purchase order and finance agreement should be read together as a single transaction. In *Gonzalez v. Schmerler Ford*, 397 F. Supp. 323 (N.D. Ill. 1975), the court was confronted with a similar scenario. The plaintiff in that case had signed a document stating that a Pinto was to be purchased for $2,255, $10 of which was to be paid on October 1, the date the plaintiff signed the document. The remaining amount was to be paid two days later, on October 3. Another document was executed on October 3, which reflected an installment sales contract detailing a cash down-payment, a trade-in, and full disclosure of the credit information required by law. The plaintiff argued that the second document was based upon an oral agreement on October 1, that plaintiff would buy the Pinto upon the expectation that defendant could arrange financing.

The court held that the situation compelled the examination of parol evidence to determine whether the first document executed by the parties reflected a commitment by plaintiff to buy the car subject to being able to arrange financing, or an intent to purchase the car in one cash payment due two days later. *Gonzalez*, 397 F. Supp. at 325. If the latter were true, a disclosure of the credit terms was not required on October 1 under the Truth In Lending Act. 15 U.S.C.A. § 1601 *et seq.* (West 1992). The court went on to consider facts stipulated to by the parties and determined that plaintiff agreed to buy the car only if his credit was approved. The court found that financing was an integral part of the sale of the Pinto on October 1 and the "defendant's procedures compelled credit disclosures on that date." *Gonzalez*, 397 F. Supp. at 328.

■ The trial court also based the dismissal of count I on its finding that Packey Webb complied with the Truth In Lending Act (15 U.S.C.A. § 1601 *et seq.* (West 1992)), by disclosing plaintiff's financing terms before she entered into her retail installment agreement. We disagree. The fact that Packey Webb may have complied with the Truth In Lending Act does not bar plaintiff's Consumer Fraud Act claim that Packey Webb engaged in unfair and deceptive practices.

A similar argument was rejected in *Heastie v. Community Bank*, 690 F. Supp. 716 (N.D. Ill. 1988). In that case the court reviewed the preemption principles as stated by the Supreme Court. Where

Congress has not explicitly displaced state regulations in a specific area, state law is void to the extent that it conflicts with federal law. A conflict arises where "compliance with both federal and state regulations is a physical impossibility" or when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Fidelity Federal Savings & Loan Ass'n v. De la Cuesta*, 458 U.S. 141, 153, 73 L. Ed. 2d 664, 675, 102 S. Ct. 3014, 3022 (1982).

Applying these principles to the Consumer Fraud Act and the Truth In Lending Act, the *Heastie* court stated:

> "Obviously, compliance with both the TILA [Truth In Lending Act] and the [Consumer Fraud Act] is not a physical impossibility—compliance with the TILA does not imply a violation of the [Consumer Fraud Act]. It also seems that the [Consumer Fraud Act] promotes rather than hinders the goals of the TILA. The [Consumer Fraud Act] prohibits *inter alia*, 'deceptive practices [employed] in the conduct of any trade or commerce ...' [citation], thereby promoting the TILA's goal of 'the informed use of credit' [citation] in a range of conduct larger than that covered by the disclosure provisions in the TILA." *Heastie*, 690 F. Supp. at 721.

This reasoning is equally applicable in this case. Nor do we accept Packey Webb's argument that the Consumer Fraud Act itself bars plaintiff's claim.

Section 10b(a) of the Consumer Fraud Act provides that "[n]othing in this Act shall apply to *** [a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States." 815 ILCS 505/10b(a) (West Supp. 1995). We do not believe Packey Webb's alleged practices in this case are specifically authorized by the Truth In Lending Act. Indeed, Packey Webb's practices may have been a violation of the Truth In Lending Act, as the district court found similar practices to be so in *Gonzalez*. Plaintiff alleges that Packey Webb's practices thwart the consumer's rights protected under the Truth In Lending Act by securing plaintiff's signature on a sales contract before making credit disclosures when Packey Webb knew that the subject of the contract, the car, would be paid for with financing. The Truth In Lending Act specifically authorized Packey Webb's disclosure of plaintiff's financing terms before she entered into the retail installment agreement, but it did not specifically authorize binding her to a contract to purchase a car that would be financed before disclosing such terms.

■ Packey Webb also argues that count I was properly dismissed because plaintiff failed to allege any facts to support her allegations

that Packey Webb had a "policy and practice" of obtaining a customer's signature on a purchase order before the customer's financing terms were disclosed. However, in 1990, the legislature amended the Consumer Fraud Act to provide that proof of a public injury or pattern is not required. 815 ILCS 505/10a(a) (West 1992). In *Rubin v. Marshall Field & Co.*, 232 Ill. App. 3d 522, 597 N.E.2d 688 (1992), this court held that this amendment was a clarification of existing law and did not change the Consumer Fraud Act as it existed when plaintiff's cause of action arose. *Rubin*, 232 Ill. App. 3d at 532, 597 N.E.2d at 694. Thus, plaintiff was not required to allege facts to show Packey Webb had a practice of obtaining a customer's signature on a purchase contract before disclosing financing terms.

We are aware that section 10a was amended, effective January 1, 1996, to state:

> "Proof of a public injury, a pattern, or an effect on consumers and the public interest generally shall be required in order to state a cause of action under this Section against a party defendant who is a new vehicle dealer or used vehicle dealer within the meaning of Chapter 5 of the Illinois Vehicle Code. Proof of such public injury may be shown by any one of the following factors:
>> (1) Violation of a statute that has a public interest impact.
>> (2) Repeated acts prior to the act involving the plaintiff.
>> (3) Potential for repetition." 815 ILCS 505/10a(a) (West Supp. 1995).

This amendment is clearly a change in the law, not a mere clarification, as it is specifically carving out actions against vehicle dealers from the rule that proof of public injury or a pattern is not required. Thus, we find the amendment inapplicable to this case.

Count II

■ Packey Webb claims that count II was properly dismissed because plaintiff failed to allege any facts creating a duty to disclose the manufacturer's suggested retail price (MSRP) of the extended warranty she purchased. Packey Webb also argues that plaintiff did not plead proximate cause or justifiable reliance sufficiently for her Consumer Fraud Act claim.

Packey Webb's characterization of plaintiff's claim is misleading. Plaintiff claimed that Packey Webb did more than just fail to disclose the MSRP of the extended warranty. Packey Webb represented that it paid $595, on plaintiff's behalf, to Ford Motor Company for the extended warranty. According to plaintiff, Packey Webb also represented that it had no control over this price fixed by FMCC. Plaintiff alleged that Packey Webb actually paid less than $595 to

Ford Motor Company for the service plan and the remaining money went to Packey Webb as a profit. Plaintiff further alleged that Packey Webb's representations had the tendency to deceive consumers into believing the price for the extended warranty plan was not negotiable. We believe these allegations adequately make a claim for deceptive conduct.

Furthermore, we find that plaintiff sufficiently alleged that she suffered damages as a proximate cause of Packey Webb's representation. Packey Webb argues that because plaintiff did not specifically state that Packey Webb's representations caused *her* to pay an excessive price, but only stated that it caused *consumers* to pay excessive prices, she failed to plead proximate cause. We disagree. Plaintiff alleged that she asked if the price was negotiable and was told that the price was fixed by FMCC. She alleged that the amounts represented by Packey Webb are excessive and that she paid an excessive amount. We believe that these allegations support an allegation of proximate cause. Finally, we find that plaintiff was not required to plead reliance for her Consumer Fraud Act claim, as stated in *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 75-76, 643 N.E.2d 734, 754 (1994).

We note that the circuit court never reached the issue of FMCC's liability under the retail installment contract for Packey Webb's conduct because it found plaintiff failed to state a claim against Packey Webb. Thus, this issue is not properly before this court on review.

Count III

In count III plaintiff claimed that FMCC violated section 8.9 of the Sales Finance Agency Act. 205 ILCS 660/8.9 (West 1992). That section prohibits:

> "Fraudulent misrepresentation, circumvention or concealment by the licensee through whatever subterfuge or device of any of the material particulars or the nature thereof required to be stated or furnished to a retail buyer under the Retail Installment Sales Act or the Motor Vehicle Retail Installment Sales Act." 205 ILCS 660/8.9 (West 1992).

Plaintiff alleged that amounts disbursed to others on behalf of the consumer are required to be furnished to a retail buyer under the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/1 *et seq.* (West 1992)), and that Packey Webb misrepresented this amount on the retail installment contract. Plaintiff further alleged that the installment contract envisions assignment to FMCC in most cases, and her contract was assigned to FMCC shortly after it was signed by

her. Plaintiff claimed that "on information and belief" FMCC was aware that these installment contracts contain misleading disclosures regarding the amounts paid to Ford Motor Company for extended warranties because it reviews the installment contracts before accepting assignments. Plaintiff further claimed that FMCC benefits from Packey Webb's misrepresentation because these amounts become part of the amount financed. According to plaintiff, FMCC acquiesced in and approved of Packey Webb's representations regarding the cost of the service contracts by accepting payment under the retail installment contracts and enforcing them against consumers.

FMCC argues that count III was properly dismissed because it cannot be liable under the Sales Finance Agency Act for the oral misrepresentations made by Packey Webb or the manner in which Packey Webb completed the retail installment contract form. Without holding that a credit provider can never be liable for the representations of a retail vehicle dealer on a retail installment contract, we find that plaintiff failed to plead sufficient facts to support her Sales Finance Agency Act claim in this case.

Although plaintiff alleged that FMCC is aware of the misleading disclosures, she failed to allege how FMCC is aware of them. Plaintiff's complaint did not claim that FMCC knew of Packey Webb's oral representations regarding the extended warranty price, and we assume plaintiff is referring only to the alleged written misrepresentation on the installment contract.

Plaintiff did not allege that the contract itself was misleading. Neither did she allege that FMCC fixes the prices of the extended warranty, as Packey Webb allegedly told plaintiff, or that FMCC knows of the manufacturer's suggested retail price of the warranties. FMCC is not the seller of the extended warranty, and the contract did not indicate which plan was being sold.

The Sales Finance Agency Act prohibits "[f]raudulent misrepresentation, circumvention or concealment by the *licensee*." (Emphasis added.) 205 ILCS 660/8.9 (West 1992). Even if plaintiff had alleged sufficient facts to show that FMCC was aware that $595 was not paid to Ford Motor Company on her behalf for the extended warranty, there would still be the issue of whether FMCC's conduct would constitute a fraudulent misrepresentation, circumvention, or concealment. Since she has not alleged such facts, it is impossible for this court to determine this issue. In short, we find plaintiff did not state a claim under section 8.9 of the Sales Finance Agency Act.

Accordingly, for the foregoing reasons, the circuit court of Cook

County's order dismissing counts I and II is reversed. The circuit court of Cook County's order dismissing count III is affirmed.

Reversed in part; affirmed in part.

WOLFSON and BRADEN, JJ., concur.