(No. 89371.—

VANESSA JACKSON, Appellant, v. SOUTH HOL-
LAND DODGE, INC., *et al.* (Chrysler Financial
Corporation, Appellee).

*Opinion filed July 26, 2001.*

KILBRIDE, J., joined by HARRISON, C.J., specially concurring.

Daniel A. Edelman, Cathleen M. Combs, James O. Latturner, Susan E. Moore and Francis R. Greene, of Edelman, Combs & Latturner, of Chicago, for appellant.

Howard J. Roin and Stephen A. Miller, of Mayer, Brown & Platt, of Chicago, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

The plaintiff, Vanessa Jackson, brought this class action lawsuit against South Holland Dodge, Inc. (hereinafter, South Holland Dodge or dealership), and Chrysler Financial Corporation (Chrysler), alleging violations of

the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1994)), and the Sales Finance Agency Act (205 ILCS 660/1 *et seq.* (West 1994)), stemming from the listing on the parties' financing statement of a charge for the purchase of an extended service warranty. Chrysler filed a motion to dismiss, contending that its conduct complied with the requirements of the federal Truth in Lending Act (TILA) (15 U.S.C. § 1601 *et seq.* (1994)) and, therefore, under *Lanier v. Associates Finance, Inc.*, 114 Ill. 2d 1 (1986), it could not be held liable for the state-law claims. The circuit court of Cook County dismissed the claims against Chrysler and made its order final and appealable pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). The appellate court affirmed the dismissal of the claims against Chrysler. 312 Ill. App. 3d 158. We allowed the plaintiff's petition for leave to appeal (177 Ill. 2d R. 315), and, for the reasons that follow, we affirm the appellate court's decision.

## BACKGROUND

The plaintiff's amended complaint and the exhibits attached thereto establish that on May 17, 1995, the plaintiff purchased a 1995 Dodge Stratus from South Holland Dodge. As part of the transaction, the plaintiff purchased an extended service warranty contract for the sum of $1,099. She also entered into a motor vehicle retail installment contract with the dealership. The retail installment contract completed by the dealership states that $1,099 was paid to Chrysler for the extended service contract. However, South Holland Dodge did not actually pay all of the sum listed in the financing statement to Chrysler. Rather, South Holland Dodge paid only a small portion of the $1,099 to Chrysler and retained the balance of the charge. The plaintiff alleged in her amended complaint that the manner in which the price for the extended warranty is disclosed is deceptive and mislead-

ing because (1) the dealership represents that the entire amount is being disbursed to the company named, and (2) the charge is listed in the same section of the form as nonnegotiable items such as licensing and filing fees, leading the consumer to erroneously conclude that the cost of the extended warranty is a nonnegotiable fee.

South Holland Dodge subsequently assigned the retail installment contract to Chrysler. The plaintiff alleged that Chrysler is liable in the present case because the retail installment contract contains the following provision, which the Federal Trade Commission (FTC) has required sellers to include in consumer credit contracts since 1975:

"Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the debtor shall not exceed amounts paid by the debtor hereunder." (Hereinafter, FTC Holder Notice.) 16 C.F.R. § 433.2(a) (1997).

The plaintiff further alleged that based on Chrysler's "extensive experience in financing used car transactions," Chrysler had actual knowledge of the amounts which car dealers disbursed to the issuers of extended warranties, and knew that the amount represented on the retail installment contract as having been disbursed to the issuer of the extended warranty was in fact not disbursed. The amended complaint cited a 1990 report of the Attorney General for the State of New York, which concluded that in 54% of the cases, new car buyers paid in excess of the manufacturers' suggested retail price for service contracts, providing the dealerships with an average markup of 76%.

The amended complaint further alleged that before May 1995, Chrysler knew that courts had held that allegations that car dealers misrepresented the entire amount charged for an extended warranty while retain-

ing a portion of the amount charged stated a claim under TILA (15 U.S.C. § 1601 *et seq.* (1994)), and Regulation Z (12 C.F.R. § 226 (1995)), a comprehensive set of rules enacted by the Federal Reserve Board to implement TILA. Additionally, the plaintiff alleged that Chrysler "acquiesced and approved of the representations" made by dealerships because it benefitted from them—the inflated price of the service contract meant that a greater amount was financed by the borrower. Finally, the plaintiff alleged that Chrysler facilitated the misrepresentations of South Holland Dodge and other dealerships by producing and distributing the retail installment contract forms that dealers ultimately used to make the misrepresentations.

Chrysler filed a motion to dismiss pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)). Citing *Lanier,* Chrysler argued that because it complied with its obligations under TILA as an assignee, it could not be held liable under Illinois law for the plaintiff's state-law claims. Under TILA, an assignee can be held liable only if the misrepresentation is "apparent on the face" of the assigned document. See 15 U.S.C. § 1641(a) (1994); *Taylor v. Quality Hyundai, Inc.,* 150 F.3d 689, 694 (7th Cir. 1998). Because any misrepresentation of the dealer in this case was not apparent on the face of the document assigned to Chrysler, it cannot be held liable in this case. Chrysler also argued that the plaintiff's allegations of "actual knowledge" were irrelevant to Chrysler's compliance with TILA, and that the plaintiff's allegations lacked the required specificity to state a cause of action.

The trial court granted the motion and dismissed the plaintiff's complaint against Chrysler with prejudice. On appeal, the appellate court affirmed, finding that *Lanier* applied to bar the plaintiff's state-law claims against Chrysler and that its conclusion was supported by the

" 'overwhelming consensus' " among federal courts that compliance with TILA was an absolute bar to liability under the Consumer Fraud Act. 312 Ill. App. 3d at 164, citing *Franks v. Rockenbach Chevrolet Sales, Inc.*, No. 95—C—6266 (N.D. Ill. December 30, 1999). The appellate court then noted that a contrary conclusion had recently been reached in *Pawlikowski v. Toyota Motor Credit Corp.*, 309 Ill. App. 3d 550 (1999), which held that an assignee's exemption from TILA liability was not a defense to Consumer Fraud Act liability. The appellate court in the present case, however, determined that the state and federal cases relied upon by *Pawlikowski* did not support that court's decision. 312 Ill. App. 3d at 167.

The appellate court further concluded that the FTC Holder Notice could not be used to "trump" the exemption from liability granted by the operation of TILA. 312 Ill. App. 3d at 169. The court stated that its decision should not be interpreted as a "blanket immunization of assignees, no matter their conduct." 312 Ill. App. 3d at 168. Rather, an assignee would still be liable for its pre-assignment fraud that was active and direct. 312 Ill. App. 3d at 168. Finally, the court stated that its decision did not conflict with *Pawlikowski* in the long run because the court in that case had found similar conclusory allegations in the plaintiff's complaint to be insufficient. The appellate court in the present case declined to remand for more pleadings, however, finding it would not serve any useful purpose given the barrage of similar lawsuits around the country which indicated that the plaintiff would not be likely to form any better factual allegations of fraud. 312 Ill. App. 3d at 169-70.

## ANALYSIS

A motion to dismiss under section 2—615 challenges only the legal sufficiency of the complaint and all well-pleaded facts in the complaint are taken as true. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 490 (1996); *Anderson*

*v. Vanden Dorpel*, 172 Ill. 2d 399, 407 (1996). The question a reviewing court must determine when considering the propriety of a section 2—615 motion to dismiss is whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted. *Connick*, 174 Ill. 2d at 490.

## I. Applicability of *Lanier*

The plaintiff argues that the appellate court erred in finding that *Lanier* barred the state-law claims in this case. She contends that *Lanier* limits exemptions from liability to actions that are "specifically authorized" by TILA, and that the disclosures in this case, rather than being authorized by TILA, violate TILA. She claims that the appellate court incorrectly expanded *Lanier* when it found, in essence, that if there is no liability under TILA, then the conduct is authorized by TILA. The plaintiff relies upon *Pawlikowski*, 309 Ill. App. 3d 550, *Bernhauser v. Glen Ellyn Dodge, Inc.*, 288 Ill. App. 3d 984 (1997), and *Grimaldi v. Webb*, 282 Ill. App. 3d 174 (1996), to support her position.

In *Lanier*, this court considered whether compliance with TILA is a defense to liability under the Consumer Fraud Act. There, the plaintiff instituted a class action suit against a financing company whose loan documents provided that interest would be computed using the Rule of 78's if the borrower prepaid the outstanding loan balance. The plaintiff contended that the use of the Rule of 78's to compute interest in loans made to unsophisticated borrowers, absent an explanation to the borrower about the effects of the rule upon early repayment, constituted common law fraud and violated the Consumer Fraud Act.

This court in *Lanier* noted that section 10b(1) of the Consumer Fraud Act provides that the Consumer Fraud Act does not apply to " '[a]ctions or transactions specifi-

cally authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.' " *Lanier*, 114 Ill. 2d at 17, quoting Ill. Rev. Stat. 1981, ch. 121½, par. 270b(1) (now 815 ILCS 505/10b(1) (West 2000)). Under this provision, conduct which is authorized by federal statutes and regulations, such as those administered by the Federal Reserve Board, is exempt from liability. *Lanier*, 114 Ill. 2d at 17.

This court acknowledged that TILA itself did not specifically address the type of disclosure required, but that the Federal Reserve Board rule, Regulation Z, required " 'identification of the method of computing any unearned portion of the finance charge in the event of prepayment in full which includes precomputed interest charges.' " *Lanier*, 114 Ill. 2d at 12, quoting 12 C.F.R. § 226.8(b)(7) (1981). The staff of the Federal Reserve Board, however, stated in an official interpretation that mere reference to the Rule of 78's by name is sufficient disclosure under Regulation Z because the Rule of 78's involves complex mathematical formulations which cannot be accurately condensed into simple statements. *Lanier*, 114 Ill. 2d at 12-13. Noting that the Federal Reserve Board's formal interpretations are entitled to great deference, this court held that because the defendant acted in conformity with the interpretation, the defendant did not violate Regulation Z by failing to explain the operation of the Rule of 78's. *Lanier*, 114 Ill. 2d at 13-16.

After concluding that the defendant did not violate TILA, this court then considered whether compliance with TILA precludes liability under the Illinois statute. *Lanier*, 114 Ill. 2d at 16. In determining that compliance with TILA does preclude liability under the Illinois statute, the court stated the following:

"The Consumer Fraud Act, under which plaintiff complains, does not mandate any particular form or subject of

disclosure, but rather is a general prohibition of fraud and misrepresentation. Because the Illinois consumer credit statutes requiring specific disclosures are met by compliance with the Truth in Lending Act, we believe that the Consumer Fraud Act's general prohibition of fraud and misrepresentation in consumer transactions did not require more extensive disclosure in the plaintiff's loan agreement than the disclosure required by the comprehensive provisions of the Truth in Lending Act. Rather, we perceive in the disclosure provisions of Illinois' consumer credit statutes a consistent policy against extending disclosure requirements under Illinois law beyond those mandated by the Truth in Lending Act, in situations where both the Act and the Illinois statutes apply." *Lanier*, 114 Ill. 2d at 17.

We believe that the language quoted in *Lanier* applies with equal force in the present case. Chrysler, as assignee, complied with the disclosure requirements of TILA by not violating its obligation under the Act. We find no merit to the plaintiff's claim that this case is fundamentally different from *Lanier* simply because here the dealership, as the creditor, violated TILA, while the creditor in *Lanier* did not violate TILA. The plaintiff's argument ignores the reality that Chrysler complied with its obligations under TILA. In fact, Chrysler's compliance with TILA is even clearer in this case than was the compliance of the creditor in *Lanier* because in *Lanier* the court had to resort to a staff interpretation to determine compliance, while compliance in this case can be determined from the express language of the statute enacted by Congress.

The purpose of TILA is "to assure a meaningful disclosure of credit terms." 15 U.S.C. § 1601(a) (1994). However, in enacting its 1980 amendments to section 1641(a) of TILA, Congress expressed the additional purposes of narrowing "considerably the potential scope of assignee liability," to " 'mak[e] compliance easier for creditors,' " and to limit civil liability for statutory penalties for only significant violations. *Ramadan v. Chase*

*Manhattan Corp.*, 229 F.3d 194, 200 (3d Cir. 2000), citing S. Rep. No. 96—73 (1979), *reprinted in* 1980 U.S.C.C.A.N. 280. To achieve these goals, TILA imposes separate and distinct disclosure obligations on creditors and assignees. TILA makes creditors, such as the dealership in this case, primarily responsible for making the required disclosures and ensuring that they are accurate. Creditors commit a violation of TILA when they fail, as alleged in this case, to disclose their retention of a portion of extended warranty charges reported as "Amounts Paid to Others on Your Behalf." See *Taylor*, 150 F.3d at 691; see also *Gibson v. Bob Watson Chevrolet—Geo, Inc.*, 112 F.3d 283 (7th Cir. 1997). However, TILA limits the duty required by *assignees* under the Act to a review of the assigned documents themselves to determine if they contain violations that a reasonable person can spot on the face of those documents. 15 U.S.C. § 1641(a) (1994); *Taylor*, 150 F.3d at 694; accord *Ramadan*, 229 F.3d at 197; *Green v. Levis Motors, Inc.*, 179 F.3d 286, 295 (5th Cir. 1999); *Ellis v. General Motors Acceptance Corp.*, 160 F.3d 703, 709-10 (11th Cir. 1998).

Section 1641(a) of TILA specifically addresses the liability of assignees as follows:

"Except as otherwise specifically provided in this subchapter, any civil action for a violation of this subchapter or proceeding *** which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is *apparent on the face of the disclosure statement ***. A violation apparent on the face of the disclosure statement includes but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned, or (2) a disclosure which does not use the terms required to be used by this subchapter." (Emphasis added.) 15 U.S.C. § 1641(a) (1994).

The plaintiff does not allege in her amended complaint that the disclosure violation—that the dealer kept a por-

tion of the amount paid for the extended warranty—appears anywhere on the face of the documents assigned to Chrysler. In such cases, various circuits of the federal court of appeals have consistently dismissed TILA claims brought against assignees because the disclosures were not apparent on the face of the assigned documents. *Ramadan*, 229 F.3d at 203, *Green*, 179 F.3d at 296; *Ellis*, 160 F.3d at 710; *Taylor*, 150 F.3d at 691.

Those courts have also rejected allegations similar to the ones made by the plaintiff in this case of "actual knowledge" based on an assignee's "experience in the field." *Ramadan*, 229 F.3d at 198, *Taylor*, 150 F.3d at 694. For example, in *Taylor* the court noted:

"[W]e cannot agree that awareness of the practices of some creditors can be equated to knowledge that a particular disclosure on a particular TILA form is inaccurate or incomplete. These are good cases in point. Suppose that 75%, or even 90%, of all automobile dealers in the greater Chicago area engage in the practice about which the plaintiffs are complaining. That still does not mean that an employee of a bank or other financial institution could tell, simply by looking at the face of the documents assigned, whether a particular TILA statement before [him or] her was inaccurate or incomplete. One out of four, or one out of ten, might be perfectly accurate. In effect, the rule which the plaintiffs are arguing would impose a duty of inquiry on financial institutions that serve as assignees. Yet this is the very kind of duty that the statute precludes, by limiting the required inquiry to defects that can by ascertained from the face of the documents themselves." *Taylor*, 150 F.3d at 694.

We agree with the appellate court that there is no reason why *Lanier*'s reach should not extend to instances where an assignee is free from liability under federal law because of the TILA exemption in section 1641(a). As we noted in *Lanier*, there is a consistent policy throughout Illinois law against extending disclosure requirements beyond what is mandated by federal law. *Lanier*, 114 Ill. 2d at 17. If an assignee were liable under the Consumer

Fraud Act, though exempt from liability under TILA, it would impose disclosure requirements on assignees beyond those mandated by federal law. This would frustrate the overarching reasons put forth by Congress in enacting the assignee exemption, *i.e.*, to narrow assignee liability, to make compliance easier for creditors, and to eliminate confusion as to the responsibilities of assignees. See *Ramadan*, 229 F.3d at 200. Thus, we conclude that an assignee is not responsible for the misrepresentations made by the dealer to the consumer outside of reviewing the face of the assigned document for apparent defects. Accordingly, we will follow *Lanier* and hold that compliance with the disclosure requirements of TILA is a defense to the Consumer Fraud Act claim against Chrysler in this case.

The plaintiff's reliance on *Pawlikowski* is not persuasive. The cases relied upon by *Pawlikowski* do not support its finding that *Lanier* should not apply to bar liability where the assignee complied with TILA under similar facts. For example, *Pawlikowski* relied upon *Bernhauser v. Glen Ellyn Dodge, Inc.*, 288 Ill. App. 3d 984 (1997). However, *Bernhauser* did not involve a claim against an assignee. Rather, the plaintiff in that case sued the dealership and the manufacturer, not the finance company. Thus, the case did not involve an issue of an assignee's liability under the Consumer Fraud Act where the assignee had met its obligations under section 1641(a) of TILA. In sum, we find the rationale of *Pawlikowski* to be flawed with respect to the application of *Lanier*.

Additionally, we note that *Pawlikowski* ultimately concluded that the allegations in the plaintiff's complaint were insufficient to state a cause of action under the Consumer Fraud Act or for common law fraud or civil conspiracy. *Pawlikowski*, 309 Ill. App. 3d at 563-65. The allegations found insufficient in *Pawlikowski* were very

similar to those made by the plaintiff in the present case. Specifically, the plaintiff in *Pawlikowski* alleged that the assignee " 'participated in a scheme and therefore conspired with dealerships to *** exact monies in amounts in excess of' the actual cost of the warranties," that the assignee "was aware of the misleading disclosures and that [the assignee] produced and distributed the retail installment contracts 'that enable [the dealer] *** to make the misrepresentations' to the plaintiff." *Pawlikowski*, 309 Ill. App. 3d at 564. Thus, the instant appellate court correctly noted that *Pawlikowski* did not conflict with its view that such allegations are insufficient to state a cause of action.

We also find the plaintiff's reliance upon *Grimaldi v. Webb*, 282 Ill. App. 3d 174 (1996), to be unpersuasive. There, the plaintiff sued the dealership and the assignee of the financing statement, claiming that the dealer misrepresented the amount of the extended warranty purchased by the plaintiff. The appellate court rejected the *dealership's* claim that its conduct was authorized by TILA, finding instead that the dealership's conduct may have actually violated TILA. *Grimaldi*, 282 Ill. App. 3d at 181. The appellate court then noted that the circuit court never reached the issue of the assignee's liability for the dealership's conduct under the Consumer Fraud Act because it found that the plaintiff failed to state a claim against the dealership. Therefore, the appellate court continued, the issue of the assignee's liability was not properly before it on review. *Grimaldi*, 282 Ill. App. 3d at 183. Given that *Grimaldi* does not address the liability of assignees or our holding in *Lanier*, we fail to see the relevance of that case to the plaintiff's claim that *Lanier* should not apply here.

We also agree with the appellate court that application of *Lanier* to this case does not confer a blanket immunization of assignees from liability under the Con-

sumer Fraud Act. A plaintiff would be entitled to maintain a cause of action under the Consumer Fraud Act where the assignee's fraud is active and direct. Pre-assignment fraud would be independent of and separate from the TILA assignee exemption and would thus be actionable under Illinois law. For example, if a plaintiff could allege specific facts showing that the assignee met with the car dealer and concocted a scheme to put false statements on the financing statement, an assignee would not be exempt from a state fraud action from a duped buyer.

In opposing a motion for dismissal under section 2—615 of the Code of Civil Procedure, a plaintiff cannot rely simply on mere conclusions of law or fact unsupported by specific factual allegations. *Anderson*, 172 Ill. 2d at 408. Illinois is, moreover, a fact-pleading jurisdiction, and a plaintiff must allege facts sufficient to bring his or her claim within the cause of action asserted. *Anderson*, 172 Ill. 2d at 408.

In the present case, there are no specific factual allegations that, prior to the assignment of the financing statement, Chrysler directly participated in a scheme with the dealership to misrepresent facts to the plaintiff. Instead, the plaintiff's conclusory allegations of "actual knowledge" are at best nothing more than a claim that Chrysler knowingly received the benefits of another's fraud. We have previously held that the Consumer Fraud Act does not provide a cause of action against those who knowingly receive the benefits from the person committing a violation of the Act. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 370 (1998).

Here, the closest the plaintiff came to alleging specific factual allegations to support its conclusory allegations was its claim that Chrysler supplies the blank forms that the dealerships later fill out with a misrepresentation as to the allocation of the extended warranty charge.

However, the blank forms themselves do not contain a misrepresentation, and there was nothing inherently deceptive about those forms. As the appellate court correctly noted, "[t]he forms did not promote the deceptive practice of the dealers—no more than the Internal Revenue Service could be said to promote fraud when it supplies blank forms to tax cheaters." 312 Ill. App. 3d at 169.

## II. FTC Holder Notice

The plaintiff argues that Chrysler assumed liability through the FTC Holder Notice contained in the contract. As previously noted, the FTC Holder Notice contained in the contract provides for assignee liability with respect to all claims and defenses which the debtor could assert against the seller. In view of this provision, the plaintiff maintains that the installment contract should be enforced against the assignee as written as a matter of state contract law.

We disagree. In the context of federal TILA claims, the federal courts that have considered the same argument have unanimously rejected it. This is because (1) the FTC language is required by FTC regulation and is therefore not the subject of bargaining between the parties, and (2) its reach has been modified by subsequent congressional statutory amendment. In that regard, we note that the FTC Holder Notice language is required to be placed in all consumer installment contracts by an FTC regulation adopted in 1975. 16 C.F.R. § 433.2(a) (1997); *Taylor*, 150 F.3d at 692. The language is a legally required part of every consumer financing contract right down to the required font size. See 16 C.F.R. § 433.2(a) (1997). As the *Taylor* court observed, "[t]he Holder Notice, even though contained within the contract, was not the subject of bargaining between the parties, and indeed could not have been. It is part of the contract by force of law, and it must be read in light of other laws that modify

its reach." *Taylor*, 150 F.3d at 693. The *Taylor* court noted that in 1980 Congress specifically amended section 1641(a) of TILA to limit assignee liability. Thus, the unmistakable effect of the 1980 amendment is to trump the FTC's Holder Notice. *Taylor*, 150 F.3d at 692-93.

Adherence to the principle that the Holder Notice must be read in light of section 1641(a)'s limitation on assignee liability does not render the contract language meaningless. *Ellis*, 160 F.3d at 708. The FTC provision requiring the Holder Notice continues to fill a valuable role by confirming the right of buyers to withhold payment from sellers or assignees, if it becomes apparent that the car purchased is a lemon. *Ellis*, 160 F.3d at 709.

The plaintiff cites section 1610(d) of TILA (15 U.S.C. 1610(d) (1994)), which provides that "[e]xcept as specified in sections 1635, 1640, and 1666e of this title, this subchapter and the regulations issued thereunder do not affect the validity or enforceability of any contract or obligation under State or Federal law." Based on the language of section 1610(d), she argues that section 1641(a) should not be read to modify the reach of the FTC Holder Notice in the contract.

Essentially the same argument was rejected by the Court of Appeals, Fifth Circuit, in *Green v. Levis Motors, Inc.*, 179 F.3d 286 (5th Cir. 1999). There, the court noted that the FTC's regulation did not neatly complement the limitation on assignee liability in section 1641(a). The court concluded, however, that to read section 1610(d) in the way suggested by the plaintiff would produce an absurd result: the protections of section 1641(a) would never have any effect on consumer credit contracts. *Green*, 179 F.3d at 296. We find the same rationale to be applicable here. Accordingly, we reject the plaintiff's contract-based effort to side-step section 1641(a) of TILA.

The plaintiff's argument relying on the FTC Holder Notice must be rejected for the additional reason that it

conflicts with the official FTC commentary on the subject. When the FTC adopted its Holder Notice requirement, it published an official commentary explaining that the Holder Notice could be used as a shield against claims by assignees, but that it only permits affirmative actions against assignees where the seller's breach is so substantial that rescission is warranted. The official commentary reads as follows:

"This rule is directed at the preservation of consumer claims and defenses [which] means that a consumer can (1) defend a creditor's suit for payment of an obligation by raising a valid claim against the seller as a setoff, and (2) maintain an affirmative action against a creditor who has received payments for a return of monies paid on account. The latter alternative will only be available where a seller's breach is so substantial that a court is persuaded that rescission and restitution are justified. The most typical example of such a case would involve non-delivery, where delivery was scheduled after the date payments to a creditor commenced." 40 Fed. Reg. 53,505, 53,524 (1975).

The plaintiff does not argue that the alleged disclosure violation in the present case would warrant rescission of the underlying contract. Instead, she attempts to contradict the official commentary by relying on an informal FTC staff opinion letter which asserts that there are no limitations on the assignee's liability under the required FTC Holder Notice. We note, however, that this document was not submitted to the circuit court and is not properly a part of the record on appeal. Thus, it cannot be considered by this court. *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 415 (1970). At any rate, the letter acknowledges that it is an informal staff opinion letter, not binding on the FTC. We, then, do not find it persuasive authority to override the official commentary, indicating that the plaintiff may not use the Holder Notice as an affirmative weapon against the assignee under the present circumstances.

### III. Sales Finance Agency Act Claim

The plaintiff next argues that the appellate court erred in affirming the trial court's dismissal of the plaintiff's Sales Finance Agency Act claim. She notes that the Sales Finance Agency Act contains an "actual knowledge" standard of liability. See 205 ILCS 660/8.5 (West 1994). She points out that TILA's disclosure requirements "do not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except to the extent that those laws are inconsistent with the provisions of this subchapter and then only to the extent of the inconsistency." See 15 U.S.C. § 1610(a)(1) (1994). She then asserts that the "apparent on the face standard" of section 1641(a) of TILA does not preempt the "actual knowledge" standard.

Initially, we note the plaintiff does not make an argument that the disclosure requirements of TILA and the standard set forth in the Sales Finance Agency Act are consistent. Section 1610(a)(1) provides that the provisions of TILA preempt state law to the extent that the state law is inconsistent with those provisions. 15 U.S.C. § 1610(a)(1) (1994); 12 C.F.R. § 226.28(a)(1) (1995). As previously stated, the language of section 1641(a) of TILA sets forth a single, clear standard, which provides that in order for an assignee of a loan to be held liable for a disclosure violation, the violation must be "apparent on the face" of the disclosure statement. Thus, a good argument could be made that an "actual knowledge" standard places an additional burden on assignees in conflict with TILA, which would therefore preempt the application of the state law. However, we need not decide this question because we find that the plaintiff's complaint fails to state a cause of action under the Sales Finance Agency Act.

Section 8.5 of the Sales Finance Agency Act provides that a violation of the Act occurs with the "[p]urchase of

any retail contract *** after actual knowledge that the contract *** violates this Act *** or the Motor Vehicle Retail Installment Sales Act." 205 ILCS 660/8.5 (West 1994). The plaintiff's amended complaint alleges that Chrysler's conduct violated the Motor Vehicle Retail Installment Sales Act (815 ILCS 375/1 *et seq.* (West 1994)). Unlike the strict disclosure requirements of TILA, however, the Motor Vehicle Retail Installment Sales Act requires, in relevant part, only that the contract disclose "clearly, conspicuously and in a meaningful sequence" the following items: "[a]ll other charges, individually itemized, which are included in the amount financed but which are not a part of the finance charge." 815 ILCS 375/5(4) (West 1994). Here, the $1,099 charge for the extended warranty was clearly disclosed in the contract. That the dealer was retaining a portion of the amount disclosed was not a required disclosure and nothing in the Motor Vehicle Retail Installment Sales Act requires any further detail. Accordingly, the plaintiff's allegation that Chrysler had "actual knowledge," based on its "experience," that the full amount of the warranty was not disbursed to the issuer failed to state a claim upon which relief could be granted under the Sales Finance Agency Act.

Lastly, the plaintiff requests in her reply brief that she be given an opportunity to replead her complaint. However, the plaintiff failed to suggest in her appeal briefs any factual allegations or proposed amendments which might cure the defects in her amended complaint. At oral argument, the plaintiff suggested that she could allege that Chrysler had a motivation to sell "other Chrysler products" and that Chrysler conducts a "heavy review" of the dealership contracts. We do not believe, however, that such allegations would bring her claim within the scope of the causes of action being asserted. See *Anderson,* 172 Ill. 2d at 408-11.

58

## CONCLUSION

For the reasons stated, we hold that section 1641(a) precludes assignee liability under the Consumer Fraud Act in this case. We further hold that the plaintiff failed to state a cause of action under either the Sales Finance Agency Act or the Motor Vehicle Retail Installment Sales Act. Accordingly, we affirm the judgment of the appellate court.

*Affirmed.*

JUSTICE KILBRIDE, specially concurring:

I agree with the majority's determination that the plaintiff in this case did not sufficiently plead a cause of action under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (815 ILCS 505/1 *et seq.* (West 1994)) against the assignee of the contract, Chrysler Financial Corporation (Chrysler). I therefore concur in the result. I believe, however, that the majority has unnecessarily relied upon our holding in *Lanier* when the resolution of this case is dictated solely by the language of section 1641 of the Truth in Lending Act (TILA) (15 U.S.C. § 1641 (1994)).

Unlike the case at hand, *Lanier* involved a suit against a creditor directly, as opposed to an assignee, and whether the fact that the creditor engaged in conduct *specifically authorized* by TILA was a defense to liability under the Consumer Fraud Act. The loan agreement in *Lanier* referred to "the Rule of 78's" to explain the method of calculating the creditor's accrued interest if the borrower prepaid the outstanding balance. The creditor provided no further explanation of the functioning of the Rule of 78's. After prepaying the loan amount, plaintiff filed suit under the Consumer Fraud Act, partially alleging that the lender's failure to explain the mathematical operation of the Rule of 78's constituted a deceptive business practice under the Consumer Fraud Act. The lender responded that simple reference to the

Rule of 78's method was a sufficient disclosure under TILA, according to the Federal Reserve Board, and compliance with TILA should preclude liability under the Consumer Fraud Act.

In holding that specific compliance with TILA precluded liability under the Consumer Fraud Act, this court noted that section 10b(1) of the Act provides that it does not apply to " '[a]ctions or transactions *specifically authorized* by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States.' " (Emphasis added.) *Lanier*, 114 Ill. 2d at 17, quoting Ill. Rev. Stat. 1981, ch. 121½, par. 270b(1) (now 815 ILCS 505/10b(1) (West 2000)). The method of disclosure for the Rule of 78's used by the creditor in *Lanier* was *specifically authorized* by the Federal Reserve Board. I therefore agree with plaintiff that *Lanier* plainly limited exemptions from liability to conduct that is directly required by TILA as opposed to conduct that does not violate TILA. I also agree with plaintiff that the appellate court (and now this court) has vastly extended our holding in *Lanier* by finding that if there is *no technical violation* of TILA, then the conduct is *specifically authorized* by TILA. This interpretation dramatically expands the *Lanier* holding and leaves ajar a door of escape for creditors who are being sued directly by borrowers. Simply put, under the majority's holding in this case, if a creditor is able to show that it has not engaged in conduct violative of TILA, there may not be a remedy for a plaintiff for an unfair or deceptive business practice under the Consumer Fraud Act. Under the *Lanier* holding, a creditor had to be affirmatively complying with a mandate of TILA in order to be so exempted from liability under the Act, and I believe that is the only viable rule.

In my view, the *Pawlikowski* court arrived at the appropriate conclusion with regard to assignees by, in ef-

fect, simply relying on the plain language of section 1641. Under that section, an action may be brought against an assignee " 'only if the violation *** is apparent on the face of the disclosure statement.' " *Pawlikowski*, 309 Ill. App. 3d at 558, quoting 15 U.S.C. § 1641(a) (1994). Thus, unless there is such a patent violation, or unless the plaintiff can show active and direct, preassignment fraud on the part of the assignee, then there is no viable cause of action for the plaintiff against the assignee. In such cases as in the case at hand, a court need not move beyond these two specific avenues of inquiry.

For these reasons, I concur only in the result arrived at by the majority and I do not endorse the reasoning employed to reach that result.

CHIEF JUSTICE HARRISON joins in this special concurrence.